PART
1/24/14





U.S. Department of Justice

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

*United States Attorney*
*District of Maryland*

2014 MAY -1 P 12: 25

CLERK'S OFFICE

*Christopher J. Romano*
*Assistant United States Attorney*
*Christopher.Romano@usdoj.gov*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201-3119*

DIRECT: 410-209-4907
MAIN: 410-209-4800
BY __ FAX: 410-962-0717 __ TY

January 24, 2014

Catherine Flynn, Esquire
Mead & Flynn
1 North Charles St., Suite 2470
Baltimore, MD 21201

Re: United States v. Rebecca Belete
Crim. No. ELH-13-0512

Dear Ms. Flynn:

This letter, together with the Sealed Supplement confirms the plea agreement which has been offered to your client, Rebecca Belete (Defendant) by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have her execute it in the spaces provided below. If this offer has not been accepted by <u>February 14, 2014</u>, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

1.  The Defendant agrees to plead guilty to Count One of the Indictment, as amended, which charges her with conspiracy to possess with the intent to distribute 100 grams or more of heroin, a Schedule I controlled substance, in violation of 21 U.S.C. §846. The Defendant admits that she is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offense

2.  The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

    a.  At or about the time charged in the Indictment, in the District of Maryland, the Defendant knowingly, intentionally and willfully agreed with one or more persons to distribute, or possess with the intent to distribute 100 grams or more of a quantity of a mixture or substance containing a detectable amount of heroin;

    b  The participation by the Defendant was knowing and voluntary, that is not by accident or mistake.

Penalties

3. The maximum sentence provided by statute for the offense to which your client is pleading guilty is as follows: imprisonment for forty (40) years with a minimum mandatory sentence of five (5) years, and a $5,000,000 fine, followed by a term of supervised release of at least four (4) years. In addition, your client must pay $100 as a special assessment under 18 U.S.C. §3013, which will be due and should be paid at or before time of sentencing. Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2500.00 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3). If a fine is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if she serves a term of imprisonment, is released on supervised release, and then violates the conditions of her supervised release, her supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

Waiver of Rights

4. The Defendant understands that by entering into this agreement, she surrenders certain rights as outlined below:

    a. If the Defendant had persisted in her plea of not guilty, she would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b. If the Defendant elected a jury trial, the jury would be comprised of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in her defense, however, she would have the subpoena power of the Court to compel the witnesses to attend.

    d. The Defendant would have the right to testify in her own defense if she so chose, and she would have the right to refuse to testify. If she chose not to testify, the

2

Court could instruct the jury that they could not draw any adverse inference from her decision not to testify.

    e. If the Defendant were found guilty after a trial, she would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that she may have to answer the Court's questions both about the rights she is giving up and about the facts of her case. Any statements the Defendant makes during such a hearing would not be admissible against her during a trial except in a criminal proceeding for perjury or false statement.

    g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find her guilty.

    h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status.

### Factual and Advisory Guidelines Stipulation

    5. This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt and to the following applicable sentencing guidelines factors:

### Base Offense Level and Adjustments

    (a). This Office and the Defendant stipulate and agree that the applicable base offense level is a level 28, pursuant to USSG §§2D1.1(c)(6), and 1B1. 3 to account for at least 400 grams of heroin, but less than 700 grams of heroin.

    (b). This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for her criminal conduct. This Office agrees to make a motion pursuant to USSG §3E1.1(b) for an additional one-level decrease in recognition of the Defendant's acceptance of personal responsibility for her conduct. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about her involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to

sentencing; (vi) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (vii) attempts to withdraw her plea of guilty.

        (c). The parties agree that if the Defendant meets the criteria under USSG §5C1.2 ("safety valve") that her offense level should be decreased by two levels.

        (d). The Defendant is free to argue for any offense characteristics, sentencing guidelines factors, departures and/or adjustments set forth in Chapters 2, 3 or 4 of the United States Sentencing Guidelines, including role in the offense, as well as a variance under 18 U.S.C. §3553, upon giving the Government notice at least two weeks prior to the date of sentencing. The Government reserves the right to oppose any request(s) made by the Defendant.

        6. The Defendant understands that there is no agreement as to her criminal history or criminal history category, and that her criminal history could alter her offense level if she is a career offender or if the instant offense was a part of a pattern of criminal conduct from which she derived a substantial portion of her income.

### Obligations of the United States Attorney's Office

        7. This Office reserves the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct which this Office deems relevant to sentencing, including the conduct that is the subject of any counts of the Indictment that this Office has agreed to dismiss at sentencing. This Office will be free to recommend any sentence within the applicable guideline range. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

### Waiver of Appeal

        8 In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

    a) The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

    b) The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any term of imprisonment to the extent that it **exceeds an adjusted base offense level of 25**; (ii) and this Office reserves the right to appeal any term of imprisonment to the extent that it is **below an adjusted base offense level 25**.

c) Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d) The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

9. The Defendant agrees that she will not commit any offense in violation of federal, state or local law between the date of this agreement and her sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under USSG § 3C1.1, or (ii) fails to accept personal responsibility for her conduct by failing to acknowledge her guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that she may not withdraw her guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

10. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the Presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw her guilty plea, and will remain bound to fulfill all of her obligations under this agreement. The Defendant understands that neither the prosecutor, her counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range

or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

11. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and together with the Stipulation of Facts and the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this letter, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Seema Mittal
Christopher J. Romano
Assistant United States Attorneys

I have read this agreement and sealed supplement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Guidelines Stipulation with my attorney and I do not wish to change any part of it. I understand this plea agreement, and I voluntarily agree to it. I am completely satisfied with the representation of my attorney.

2/24/14                           _____
Date                              Rebecca Belete

I am Ms. Belete's's attorney. I have carefully reviewed every part of this agreement and sealed supplement with her. To my knowledge, her decision to enter into this agreement is an informed and voluntary one.

2/24/14                           _____
Date                              Catherine Flynn

6

## ATTACHMENT A
## STIPULATION OF FACTS

The undersigned parties stipulate and agree that if this case had proceeded to trial, the Government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.

As part of an investigation into heroin trafficking, the FBI's Safe Streets Squad, sought and received authorization to intercept cellular telephone calls from a number of members of a drug trafficking organization, operating primarily in Baltimore City and County. Based on intercepted calls, as well as video surveillance, the Defendant, Rebecca Belete, was identified as a member of the organization. On multiple occasions the Defendant was intercepted over court authorized wiretaps. Illustrative of the intercepted calls are the following:

On August 8, 2013 at approximately 12:33 p.m., a co-conspirator, Enzo Blanks, received an incoming call from (301) 379- 4164 (Call #4043), which was subscribed to by the Defendant. The Defendant asked, "Hey, are you done with the stuff?" Blanks replied, "Um, yeah. I gotta come back in there but not right now. Why, what's wrong?" The Defendant stated, "Huh?" Blanks stated, "I said, I'm pretty much done with it. What's the problem?" The Defendant stated, "Naw. I was just going to put it away." Blanks replied, "You can put it away. You can do that part."

On August 22, 2013 at approximately 11:43 a.m., Blanks received an incoming call from (301) 379-4164 (call #6499), which was subscribed to by the Defendant. The Defendant asked, "Are you coming around here anytime?" Blanks replied, "Nope. Naw. I ain't got to, ain't nobody call my phone." The Defendant stated, "I just did a couple bags, but, um I can stop. You said you ain't, you don't need any." Blanks replied, "Alright."

Investigators know based on their training, knowledge and experience that calls such as those referenced above, relate to Blanks directing the Defendant to process heroin at her apartment, which was used as a stash house. Subsequently a search warrant was executed at the Defendant's apartment and recovered from the apartment was heroin, gel caps, and capping equipment used to process the heroin for distribution.

The parties stipulate and agree that the amount of heroin reasonably foreseeable to the Defendant was between 400-700 grams, thus indicating that the amount of heroin was far in excess of the amount intended for personal use, and in fact would indicate an intention to distribute.

_____
Seema Mittal
Christopher J. Romano
Assistant United States Attorneys

_____
Rebecca Belete
Defendant

_____
Catherine Flynn
Counsel for Defendant